UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEPHANIE M. MCGREW                                      CIVIL ACTION
ON BEHALF OF K.M.

VERSUS                                                  NO. 13-237

CAROLYN W. COLVIN, ACTING COMMISSIONER                  SECTION "H" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Stephanie M. McGrew, on behalf of her minor child, K.M., seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Act. 42 U.S.C. § 402 et seq. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 14, plaintiff filed a motion for summary judgment. Record Doc. No. 15. The court treats her summary judgment motion as a memorandum of facts and law regarding her instant appeal from the Commissioner's final decision. Defendant filed a timely reply memorandum of facts and law. Record Doc. No. 16.

I.   <u>PROCEDURAL HISTORY</u>

K.M. was nine (9) years old when her mother applied for SSI on her behalf on August 5, 2010, alleging a disability onset date of May 27, 2010, due to a learning disability, attention deficit disorder, attention deficit hyperactivity disorder, bipolar disorder, sleep problems and behavioral problems. (Tr. 66, 126, 249). The alleged onset date was the day after an unfavorable decision was issued on May 26, 2010 by an Administrative Law Judge ("ALJ"), denying plaintiff's previous application for SSI, which had alleged an onset date of January 1, 2005. (Tr. 39-59). After the instant application was denied, McGrew filed a timely request for a hearing, which was conducted before an ALJ on August 15, 2011. (Tr. 8). At the time of the hearing, K.M. was almost 10 years old and had just begun the fourth grade. The ALJ issued a decision on September 8, 2011, finding that K.M. was not disabled. (Tr. 8-21). After the Appeals Council denied plaintiff's request for review on December 10, 2012, the decision of the ALJ became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-4).

II.   <u>STATEMENT OF THE ISSUE ON APPEAL</u>

Plaintiff contends that the ALJ made the following error:

A.   The ALJ's findings that K.M. has less than marked limitations in the domains of acquiring and using information, caring for herself, and attending and completing tasks are contrary to relevant legal standards and not supported by substantial evidence.

III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

A.   K.M. was born in September 2001.  She was a school-age child on August 5, 2010, when her application was filed, and she is currently a school-age child.

B.   She has not engaged in substantial gainful activity since August 5, 2010.

C.   K.M. has severe impairments of attention deficit hyperactivity disorder and oppositional defiant disorder.

D.   She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

E.   K.M. does not have an impairment or combination of impairments that functionally equals the severity of any of the listings.

F.   She has not been disabled since August 5, 2010, the date she filed her application.[1]

(Tr. 11-21).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the

_____

[1]"Claimants applying to the SSI program may not receive payments for a period predating the month in which they apply for benefits."  Rosetti v. Shalala, 12 F.3d 1216, 1224 n.20 (3d Cir. 1993) (citing 20 C.F.R. § 416.335); accord Brown v. Apfel, 192 F.3d 492, 495 n.1 (5th Cir. 1999).  "Thus, the month following an application . . . fixes the earliest date from which benefits can be paid."  Hector v. Barnhart, 337 F. Supp. 2d 905, 910 (S.D. Tex. 2004) (citing 20 C.F.R. § 416.335; Brown, 192 F.3d at 495 n.1).

Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Harper v. Barnhart, 176 F. App'x 562, 565 (5th Cir. 2006); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(D). In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process. This statute applies to all child disability applicants who filed claims on or after August 22, 1996 or whose cases were not finally adjudicated before that date. Id. § 211(d)(1)(A)(I).

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 1382c(a)(3)(C)(i).

The Commissioner's final regulations in effect at the time of the ALJ's decision provide a three-step procedure for evaluating a child's claim of disability. The first step is to determine whether the claimant is engaging or has engaged in substantial gainful activity. If the answer is "yes," the claimant will be found not disabled. If the answer is "no," the second step requires a determination whether the claimant has a medically determinable severe impairment. If not, the claimant will be found not disabled. If the claimant has such an impairment, the last step is to determine whether the impairment meets or equals in severity, either medically or functionally, an impairment listed in

Appendix 1, Subpart P, Part 404 of the Commissioner's regulations (the "Listings").  If the claimant has such an impairment and the impairment meets the duration requirement, the claimant will be found disabled.  If not, the claimant will be found not disabled.  20 C.F.R. § 416.924 (2010).

An ALJ must assess functional equivalence in children by examining the child's limitations in six domains:  "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1).  An impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain.  Id. § 416.926a(a).

The claimant has the burden of proof at all steps of the inquiry.  E.R.H. v. Comm'r of Soc. Sec. Admin., 384 F. App'x 573, 575 (9th Cir. 2010) (citing 20 C.F.R. §§ 404.1512(a), 404.1512(c)); Lowery v. Comm'r, Soc. Sec. Admin., 55 F. App'x 333, 341 & n.10 (6th Cir. 2003); Cobb ex rel. J.C.C. v. Colvin, No. 12-1156-JWL, 2013 WL 1767938, at *2 (D. Kan. Apr. 24, 2013); Taylor ex rel. T.S.T. v. Astrue, No. 10-00214, 2011 WL 941289, at *2 (E.D. La. Feb. 28, 2011) (citing Fraga v. Bowen, 810 F.2d 1296, 1301 (5th Cir. 1987)), report & recommendation adopted, 2011 WL 976683 (E.D. La. Mar. 15, 2011).

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

B.    Factual Background

K.M., the claimant, testified that she does not work at any job, such as modeling or acting. (Tr. 29-30). She said she likes art, but does not know what a kaleidoscope is. (The ALJ asked her this because the ALJ said K.M. had been looking through her hands and turning them left and right while her mother testified.) K.M. stated that her school does not have art classes, but does have physical education. (Tr. 36). She said she had attended school the week of the hearing and the previous week. She thought that she would like school this year. (Tr. 36-37).

The claimant's mother, Stephanie McGrew, testified that K.M. is currently in special education classes in the fourth grade and was also in special education during second and third grades. When asked whether her daughter would take the LEAP test[2]

_____

[2]"Louisiana Educational Assessment Program (LEAP) is the series of annual assessments in English language arts, mathematics, science and social studies in 4th and 8th grades. Known as a criterion-based test, these tests are aligned to the state academic standards and determine whether a student has mastered the content of the academic standards." Louisiana Department of Education website, http://www.louisianabelieves.com/assessment/annual-assessments (visited on Nov. 13, 2013).

this year, McGrew stated that she was not sure whether K.M. would be required to take the test, since K.M. is in special education classes. (Tr. 29).

McGrew testified that K.M. was in the third grade in January 2010 when she went through the IEP [Individualized Education Program] process, but she was functioning at the kindergarten level. (Tr. 30). McGrew stated that K.M. spends about 70 percent of her school day in special education classes and now functions on a first-grade level. (Tr. 30-31). When asked whether K.M.'s learning disability had been definitively diagnosed, McGrew stated that K.M. is still undergoing testing for that, but she has been diagnosed with attention deficit disorder, attention deficit hyperactivity disorder and early signs of bipolar disorder. She testified that K.M. has trouble learning, even when she takes her medication, and that the school is unsure what causes this trouble. (Tr. 31).

McGrew stated that K.M. has a negative attitude, behavioral issues and rebelliousness. She said that K.M. talks back, has outbursts, cannot sit still in class and does not get along with her peers. She testified that her daughter takes Vyvanse[3] and Risperdal[4] and has been on these medications for quite a while. McGrew said that

---

[3]Vyvanse (generic name: lisdexamfetamine) is a central nervous system stimulant used to treat attention deficit hyperactivity disorder. It may help to increase attention and decrease impulsiveness and hyperactivity. PDRhealth (PDR Network, LLC 2013), http://www.pdrhealth.com/drugs/vyvanse (visited Nov. 13, 2013).

[4]Risperdal (generic name: risperidone) "is used for the treatment of schizophrenia. Risperdal is also used alone or in combination with other drugs for the short-term treatment of mania associated with bipolar disorder. In addition, Risperdal is approved for the treatment of irritability associated with autistic disorders in children and adolescents." Id., http://www.pdrhealth.com/drugs/risperdal (visited Nov. 13, 2013).

Vyvanse keeps K.M. focused for about three hours in the morning, but then the medicine wears off and the child starts fidgeting, moving around and disturbing other students. McGrew stated that K.M.'s physician prescribed Risperdal because of this problem, but that K.M. experienced the same result as she had with Vyvanse. (Tr. 32). Plaintiff testified that K.M.'s doctor tried prescribing a medication to be taken at lunchtime, but the drug caused K.M. to fall asleep during the afternoon. McGrew said the doctor no longer prescribes that medicine because he prefers that K.M. not miss out on class by sleeping. McGrew stated that she has talked with K.M.'s physician about the Vyvanse wearing off. She testified that K.M. takes the largest dose that can be prescribed, based on her age and weight. (Tr. 33).

McGrew stated that her daughter has trouble focusing on school work and class activities. She said she has to remind K.M. constantly at home to brush her teeth, wash her face and do household chores.

McGrew testified that K.M. has problems getting along with others. She described an incident in which K.M. refused to sit down in the school bus when told to do so by the bus driver, then she became very angry and began to throw things at the driver. Plaintiff said that the driver stopped the bus and called the police. She testified that the driver wanted the police to arrest K.M., but the police could not do so because she was only seven and one-half years old at the time. McGrew stated that she had to go to the bus to

pick up her daughter and that K.M. now rides the special education bus, which has a monitor.

McGrew described K.M.'s problems with her teachers, ranging from profanity to hitting them.  She said that K.M. has been suspended from school multiple times. McGrew testified that she could not keep a job because she had to sit in K.M.'s class so many times during the past year to deal with her child's behavior.  (Tr. 34-35).

McGrew stated that she has been taking K.M. to Child and Adolescent Behavioral Health Systems.  She said that K.M. sees a social worker there and at school, and receives one-on-one therapy.  She said that K.M. does not get along with other children most of the time.  She testified that K.M.'s doctors have advised her to ensure that K.M. keeps her doctor's appointments, goes to therapy every two to three weeks and stays on her medications.  She testified that her daughter began the school year with new special education accommodations, including three special education teachers and a social worker whom she sees daily.  (Tr. 35).

C.    Medical and School Evidence

I have reviewed the medical and school records in evidence and the ALJ's summary of the evidence.  (Tr. 13-16).  I find the ALJ's summary of the medical and school record evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.   <u>Plaintiff's Appeal</u>

An impairment functionally equals a listed impairment and renders a child disabled for purposes of the Act if the impairment results in marked limitations in <u>two</u> of the six functional domains.  20 C.F.R. § 416.926a(a).  Because the ALJ found that K.M. has a marked limitation in the domain of interacting and relating with others (Tr. 18), K.M. would qualify as disabled if she has a marked limitation in one more domain.  A claimant has a "marked" limitation when her impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities. . . .  'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i).

McGrew argues that the ALJ's findings that K.M. has less than marked limitations in the three domains of acquiring and using information, attending and completing tasks, and caring for herself are contrary to relevant legal standards and not supported by substantial evidence.  Plaintiff asserts two legal errors.  First, she contends that the evidence that K.M. functions better with medication and in the structured setting of special education classes requires the ALJ to assess her with more severe limitations in the three domains at issue.  She asserts that these more severe limitations qualify her as markedly limited in each of those domains.  McGrew also argues that the ALJ did not properly apply 20 C.F.R. § 416.924a(b)(5)(iv)(C) by rating some of K.M.'s functional limitations in more than one domain.  Plaintiff contends that, had the ALJ properly

11

applied the regulation, he should have found K.M. markedly limited in each of the three domains.

In connection with K.M.'s prior application for SSI, an ALJ held that she was not disabled because she had a marked limitation in the domain of interacting and relating with others, but no other marked limitations.  (Tr. 46, 52).  This decision conclusively establishes that K.M. was not disabled as of May 26, 2010.  Torres v. Shalala, 48 F.3d 887, 894 (5th Cir. 1995); Williams v. Shalala, 41 F.3d 664, 1994 WL 685061, at *5 (5th Cir. Nov. 25, 1994).  Thus, the only questions before this court are whether the ALJ in the instant case applied appropriate legal standards and whether substantial evidence supports his conclusion that K.M. was not disabled as of her new alleged onset date of May 27, 2010 through September 8, 2011, the date of his decision.

The ALJ reviewed all of the evidence, which included the same medical and school records dated through March 2, 2010 that the prior ALJ considered.  (Tr. 47-48, 296).  Additional evidence after that date includes progress notes dated April 6 and May 18, 2010 by K.M.'s then-treating psychiatrist, Stephen Cochran, M.D. (Tr. 285, 310); records from the first quarter of the 2010-2011 school year (Tr. 174, 258-59); a psychosocial evaluation by a clinical social worker at Child and Adolescent Behavioral Health Systems dated September 27, 2010 (Tr. 324-332); an initial psychiatric evaluation at the same clinic by Patrick Drennan, M.D., dated October 12, 2010 (Tr. 316-21); a medication order sheet with entries dated from October 12, 2010 through July 6, 2011

(Tr. 323); and the findings of psychologist Robert McFarlain, Ph.D., who reviewed all the available records and opined on November 30, 2010 that K.M. has only one marked limitation and is not disabled.  (Tr. 69-70).

The ALJ afforded "significant weight" to the opinions of Dr. McFarlain and psychologist Carlos Kronberger, Ph.D., who performed a consultative examination on October 15, 2009.  (Tr. 278-81).  The ALJ adopted Dr. McFarlain's findings that K.M. has a marked limitation in the domain of interacting and relating to others and has less than marked limitations in the domains of caring for herself and attending and completing tasks.  (Tr. 69-70).  The ALJ disagreed with Dr. McFarlain's opinion that K.M. has no limitation in acquiring and using information (Tr. 69), finding instead that K.M. has a less than marked limitation in that domain.  (Tr. 16).  The ALJ further found that plaintiff's statements concerning the intensity, persistence and limiting effects of K.M.'s symptoms are not credible to the extent they are inconsistent with his findings that her impairment does not functionally equal the listings.  (Tr. 13).

As to McGrew's argument that the ALJ failed to account properly for K.M.'s need for medications and a highly structured and supportive environment, plaintiff contends that the Commissioner's regulations require that K.M.'s limitations be rated more severely when the treatment and accommodations that she receives enable her to function better.   The regulation on which McGrew relies concerns the factors that the

13

Commissioner will consider when evaluating the effects of a child's impairment on her

functioning.  One of those factors is:

> (5)  How well you can initiate, sustain, and complete your activities,
> including the amount of help or adaptations you need, and the effects of
> structured or supportive settings–
> . . . .
> (iv) Structured or supportive settings.
> . . . .
> (C)  A structured or supportive setting may minimize signs and symptoms
> of your impairment(s) and help to improve your functioning while you are
> in it, but your signs, symptoms, and functional limitations may worsen
> outside this type of setting.  Therefore, we will consider your need for a
> structured setting and the degree of limitation in functioning you have or
> would have outside the structured setting.  <u>Even if you are able to function
> adequately in the structured or supportive setting, we must consider how
> you function in other settings and whether you would continue to function
> at an adequate level without the structured or supportive setting</u>.
> . . . .
> (E)  Therefore, <u>if your symptoms or signs are controlled or reduced in a
> structured setting, we will consider how well you are functioning in the
> setting</u> and the nature of the setting in which you are functioning (e.g.,
> home or a special class); the amount of help you need from your parents,
> teachers, or others to function as well as you do; adjustments you make to
> structure your environment; and <u>how you would function without the
> structured or supportive setting</u>.

20 C.F.R. § 416.924a(b)(5)(iv)(C), (E) (emphasis added).

Social Security Ruling 09-2p provides guidance about the interaction between this

regulation and the regulatory definition of a "marked" limitation.  Ruling 09-2p states

that information about any supports that children receive

> can be critical to determining the extent to which their impairments
> compromise their <u>ability to independently initiate, sustain, and complete
> activities</u>.  In general, if a child needs a person, a structured or supportive

14

> setting, medication, treatment, or a device to improve or enable
> functioning, the child will not be as independent as same-aged peers who
> do not have impairments.  We will generally find that such a child has a
> limitation, even if the child is functioning well with the help or support.
> <u>The more help or support of any kind that a child receives</u> beyond what
> would be expected for children the same age without impairments, <u>the less
> independently the child functions, and the more severe we will find the
> limitation to be.</u>

"Determining Childhood Disability–Documenting a Child's Impairment-Related

Limitations," SSR 09-2p, 2009 WL 396032, at *5 (Feb. 18, 2009) (emphasis added);

<u>accord</u> "Determining Childhood Disability Under the Functional Equivalence Rule–The

'Whole Child' Approach," SSR 09-1p, 2009 WL 396031, at *6 (Feb. 17, 2009).

Thus, McGrew argues that the ALJ's rating of K.M.'s limitations "must be based

on the limitations the child has or would have <u>outside</u> the structured setting; <u>i.e.</u> the rating

must be based on how the child functions outside the structured or supportive setting and

whether the child would continue to function at the improved level without the structured

or supportive setting."  Plaintiff's memorandum, Record Doc. No. 15-1 at p. 20 (citing

20 C.F.R. § 416.924a(b)(5)(iv)(C)).  In support of her argument, McGrew cites <u>Hodges</u>

<u>v. Astrue</u>, No. 10-2769, 2011 WL 4736312 (E.D. La. Oct. 6, 2011) (Zainey, J.), which

held that

> [t]he fact that [a child with attention deficit hyperactivity disorder,
> oppositional defiant disorder, a learning disorder, dysthymia and asthma]
> performed better with the aid of a support system that included increasing
> dosages of medication, group and individual therapy, special education, and
> a detailed structured and supportive Individualized Education Program

(IEP) is <u>evidence of a more severe impairment, not a "less than marked impairment</u>."

<u>Id.</u> at *1 (emphasis added).  The <u>Hodges</u> court found that substantial evidence did <u>not</u> support the ALJ's finding that the child had a less than marked limitation in attending and completing tasks.  <u>Id.</u>  The court held that the child had a marked limitation in that domain, which, combined with a second marked limitation in interacting and relating with others, rendered him disabled.  <u>Id.</u> at *2.

I respectfully disagree with <u>Hodges</u> to the extent that it appears to hold, as a matter of law in circumstances where a child needs a supportive setting, that "a more severe impairment" can never be a "less than marked impairment," or that it appears to <u>equate</u> "a more severe impairment" with a <u>marked</u> impairment, for the following reasons. Accepting plaintiff's argument that a marked limitation exists whenever a child receives support that enables her to function better would essentially require the ALJ to ignore the improved functioning.  This result is <u>not</u> supported by the regulations and Social Security Rulings quoted above or by the majority of the reported decisions that have addressed this issue.

The pertinent regulations and Social Security Rulings instruct that the more support a child receives, the less independently she functions and the more severe the Commissioner will find her limitation to be.  The Commissioner "will generally find that such a child has <u>a limitation</u>."  SSR 09-2p, 2009 WL 396032, at *5 (emphasis added); <u>see</u>

also SSR 09-1p, 2009 WL 396031, at *6 ("Such a child will have <u>a limitation</u>, even if he is functioning well with the help or support.") (emphasis added).  The ALJ here followed this guidance when he considered the evidence of K.M.'s medical treatment and supports, and found that she has limitations in four domains.

Contrary to McGrew's argument, Section 416.924a(b)(5)(iv) and Social Security Rulings 09-1p and 09-2p do

> not require that a <u>marked</u> limitation be found under the listed circumstances.  Rather, [they] require[ ] that <u>a</u> limitation be found.  The ALJ found a limitation; however, the limitation he found was a less than marked one.  That finding is "within the available zone of choice" and is not to be reversed because there is also evidence to support a different conclusion.

<u>Scotino v. Colvin</u>, No. 4:12cv0674, 2013 WL 5291722, at *10 (E.D. Mo. Sept. 19, 2013) (quoting <u>Buckner v. Astrue</u>, 646 F.3d 549, 556 (8th Cir. 2011)).

A finding of a marked limitation is <u>not</u> mandated simply because the child functions better with placement in special education classes or other supports. <u>Richardson v. Barnhart</u>, 136 F. App'x 463, 466 (3d Cir. 2005) (citing 20 C.F.R. § 416.924a(b)(7)); <u>Scotino</u>, 2013 WL 5291722, at *10; <u>T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.</u>, No. 10-5229, 2011 WL 3235735, at *7 (D.N.J. July 26, 2011).

Section 416.924a(b)(5)(iv) and the applicable Social Security Rulings only require the ALJ to <u>consider</u>, among many factors, the claimant's need for a structured setting and the degree of limitation in functioning she has or would have outside the structured

setting.  A finding that a limitation in a domain is more severe in a child who needs supports and that she functions less independently than a child who does not need supports neither equates to nor requires a finding that the particular limitation rises to the "more than moderate but less than extreme" level of a marked limitation.  A child's limitation can be more severe and the child can function less independently than a non-impaired child, but the child's limitation may still be moderate, or less than marked.

The ALJ specifically discussed the "whole child" approach in his decision and cited SSR 09-1p as a framework for his decision.  (Tr. 12).  The ALJ discussed and weighed the entirety of the medical, educational and other evidence related to K.M.'s abilities to acquire and use information,  attend and complete tasks, and care for herself.  That evidence substantially supports his conclusions regarding her limitations in those three domains.

Dr. McFarlain opined that K.M. has less than marked limitations in the domains of attending and completing tasks and caring for herself and no limitation in the domain of acquiring and using information.  (Tr. 69).  The ALJ found that K.M. has a more severe limitation in the domain of acquiring and using information than Dr. McFarlain assigned and found that the limitation is less than marked.  Dr. McFarlain's opinions, as modified by the ALJ, are consistent with Dr. Kronberger's findings and with the remainder of the record evidence.  These opinions are substantial, uncontradicted medical

evidence to which the ALJ accorded significant weight, finding them consistent with the evidence of record.  (Tr. 16).

Other evidence from the relevant time period substantially supports the ALJ's decision.  The evidence from the early part of that period indicates that K.M. was responding to her medication, "doing well" and showing a "big improvement" in her symptoms when she was seen by Dr. Cochran on March 2, April 6 and May 18, 2010.  (Tr. 285-86, 310).

K.M. was discharged from treatment by Dr. Cochran's clinic due to inactivity and several missed appointments.  (Tr. 324, 326).  She then took no medications for either three months or three weeks [there are records indicating both time frames (Tr. 316, 317, 324, 326)] before she sought treatment again in the fall of 2010.

The disciplinarian at K.M.'s  school issued a Behavior Report on September 21, 2010, stating that K.M.'s  "behavior has escalated out of control," she is frequently verbally abusive to students and staff, and "[t]oday she was caught throwing vegetables at one of her classmates.  [She] shows no remorse for her actions."  K.M. was suspended from school for two days and would not be readmitted without a parent.  (Tr. 174).

K.M. presented for treatment at Child and Adolescent Behavioral Health Systems on September 27, 2010.  Her psychosocial evaluation noted that her school had threatened to expel her if she did not receive medication and treatment for her attention deficit hyperactivity disorder.  (Tr. 324, 328).  The clinical social worker who prepared

19

the evaluation stated that K.M. had been off medications since she was discharged from Dr. Cochran's clinic in April 2010, after missing several appointments. The social worker noted that K.M.'s "treatment non-compliance continues to remain a barrier to treatment." (Tr. 328). The social worker's preliminary diagnosis was attention deficit hyperactivity disorder, combined type, and oppositional defiant disorder. The clinician assigned a Global Assessment of Functioning ("GAF")[5] score of 50, which is the highest (i.e., least severe) score in the range for a serious impairment. "A GAF score between 41 and 50 indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).'" Lee v. Barnhart, 117 F. App'x 674, 678 (10th Cir. 2004) (quoting DSM-IV-TR at 34).

Dr. Drennan conducted a psychiatric evaluation of K.M. on October 12, 2010. He noted that her school had said it would expel her if she did not get back on medication. He stated that she had been diagnosed with attention deficit hyperactivity disorder and oppositional defiant disorder when she was previously treated at Child and Adolescent

---

[5]

A GAF score represents a clinician's judgment of an individual's overall level of functioning. The reporting of overall functioning is done by using the GAF Scale, which is divided into ten ranges of functioning– e.g., 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for herself). The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range. Lower GAF scores signify more serious symptoms. George v. Barnhart, 458 F. Supp. 2d 314, 323 n.5 (S.D. Tex. 2006) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 32, 34 (4th ed. 2000)).

Behavioral Health Systems, after which she was treated by Dr. Cochran at a school-based clinic for bipolar disorder, rule out psychosis, not otherwise specified.  Dr. Drennan noted that K.M.'s school records document symptoms of attention deficit hyperactivity disorder, oppositional defiant disorder and a chronic learning issue, but that her Individualized Education Program is based solely on emotional disturbance.  He said her mother reported that K.M. had been off her medications for three weeks.  (Tr. 316-17).

On mental status examination, Dr. Drennan observed that K.M. was "hyper" and fidgeted.  She had a pleasant attitude, "great" mood and congruent affect.  Her speech was normal and she had no audio or visual hallucinations or abnormality of thought content.  Her thought process was age-appropriate and logical.  She knew her colors, but not her shapes.  She could not read even two-letter words and had a poor fund of knowledge.  (Tr. 319).  Her recent and remote memory was intact, while her judgment and insight were poor.  Dr. Drennan opined that her impulse control was poor, as would be expected with her cognitive limitations.  (Tr. 320).

Dr. Drennan stated that K.M. has chronic temper regulation problems, attention deficit hyperactivity disorder and learning difficulties.  He said that "she has improvement with attention deficit hyperactivity disorder medication treatment."  He saw no indications of bipolar disorder or psychosis.  He diagnosed attention deficit hyperactivity disorder and oppositional defiant disorder.  Because no IQ scores were available, Dr. Drennan assessed K.M. with borderline intellectual functioning versus mild

mental retardation.  He assigned her a GAF score of 50 to 60 (Tr. 320), which "indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.'" Wilson v. Astrue, 602 F.3d 1136, 1142 n.3 (10th Cir. 2010) (quoting DSM-IV-TR at 34); accord Garcia v. Astrue, 293 F. App'x 243, 246 (5th Cir. 2008) (citing Boyd v. Apfel, 239 F.3d 698, 700 & n.1 (5th Cir. 2001)).  Dr. Drennan noted that K.M.'s strengths are her positive relationships with a family guardian and a mental health care provider, her good physical health and her hobbies.  He planned to restart K.M. on Vyvanse, refer her to weekly individual therapy for anger management, implement a behavior plan for home and parenting for her mother, repeat IQ testing to determine whether K.M. is mildly mentally retarded, and contact her school to have her Individualized Education Program reflect her learning difficulties.  (Tr. 321).

A medication and lab order sheet from Child and Adolescent Behavioral Health Systems indicates that K.M. was prescribed Vyvanse on October 12, 2010 and that Risperdal was added on November 12, 2010.  Both medications continued to be prescribed for her through July 6, 2011.  (Tr. 323).

K.M. received two B's and four C's in her academic subjects and a D in Conduct on her third-grade report card dated October 18, 2010.  Her teacher stated that K.M. needed improvement in her conduct and attitude.  The report indicated that K.M. had been disciplined on September 21, 2010 for willful disobedience and on October 5, 2010 for disrespect of an authority.  (Tr. 259).

22

Although an Individualized Education Program report on October 22, 2010 stated that K.M. was making insufficient progress toward her goal in reading, her teacher stated that K.M. "can work in small groups to accomplish her goals. [She] is a pleasure too [sic] work with." (Tr. 258).

The evidence supports the ALJ's finding that plaintiff's statements concerning the intensity, persistence and limiting effects of K.M.'s symptoms are not entirely credible. A child claimant "must follow treatment prescribed by your physician . . . if the treatment can reduce your functional limitations so that they are no longer marked and severe." 20 C.F.R. § 416.930(a). "If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ." Id.

A claimant's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling limitations. Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990). Further, a medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling. Muckelroy v. Astrue, 277 F. App'x 510, 511-12 (5th Cir. 2008); Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987).

These rules apply to children seeking SSI.  <u>Richardson</u>, 136 F. App'x at 466; <u>Scales v. Barnhart</u>, 363 F.3d 699, 705 (8th Cir. 2004); <u>Scotino</u>, 2013 WL 5291722, at *10; <u>Luna ex rel. A.L. v. Astrue</u>, No. 11-1137, 2013 WL 358883, at *19-20 (D. Minn. Jan. 8, 2013), <u>report & recommendation adopted</u>, 2013 WL 359089 (D. Minn. Jan. 30, 2013); <u>T.C. ex rel. Z.C.</u>, 2011 WL 3235735, at *7; <u>L.B.M. ex rel. Motley v. Astrue</u>, No. 1:08-CV-1354-WTL-DML, 2010 WL 1190326, at *21 (S.D. Ind. Mar 23, 2010) (citing 20 C.F.R. § 416.930(a), (b)); <u>Thomas v. Astrue</u>, No. H-07-2043, 2008 WL 4279397, at *17 (S.D. Tex. Sept. 16, 2008) (citing <u>Lovelace</u>, 813 F.2d at 59; 20 C.F.R. §§ 416.930(a), 416.924a(b)(9)(I), 404.1530(a),(b), 416.930(a),(b)).

The records from the relevant time period indicate that K.M.'s symptoms improved when she took her prescribed medications and worsened when she failed to pursue treatment.  The record therefore substantially supports the ALJ's finding that plaintiff's statements regarding the severity of K.M.'s limitations are not credible insofar as they are inconsistent with the ALJ's findings that K.M. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks and caring for herself.

McGrew also contends that the ALJ erroneously failed to rate K.M.'s impairments in every affected domain.  Thus, plaintiff argues that the same functional limitations that the ALJ cited to decide that K.M. has a marked limitation in interacting and relating with others should also have been included when the ALJ rated her impairments in the other

24

three domains at issue.  "Rating the limitations caused by a child's impairment(s) in each and every domain that is affected is not 'double-weighting' of either the impairment(s) or its effects.  Rather, it recognizes the particular effects of the child's impairment(s) in all domains involved in the child's limited activities."  Social Security Ruling ("SSR") 09-7p, "Title XVI:  Determining Childhood Disability–The Functional Equivalence Domain of 'Caring for Yourself,'" 2009 WL 396029, at *4 (Feb. 17, 2009). McGrew asserts that the additional limitations, if they were properly considered in the other three domains, require findings of a marked limitation in each one.

Plaintiff cites three decisions by district courts in Louisiana, in which the court held that the ALJ erred by failing to find a marked limitation in a second domain for a child with attention deficit hyperactivity disorder who had a marked limitation in the domain of interacting and relating with others.  Harris v. Astrue, No. 10-01745, 2011 WL 6100622, at *2 (E.D. La. Nov. 3, 2011), report & recommendation adopted, 2011 WL 6100512 (E.D. La. Dec. 6, 2011); Hodges, 2011 WL 4736312, at *1; Carter v. Astrue, No. 07-1731, 2009 WL 1203355, at *6 (W.D. La. May 1, 2009).

None of these decisions establishes or cites a rule of law that particular functional limitations that are recognized in the domain of interacting and relating with others must also be rated in other domains.  Severity determinations made in other cases are not useful in deciding particular cases because the facts of each case are so different and because an impaired child's limitations must be compared with the age-appropriate

activity of children in the same age category who have no impairment, not with children who have similar impairments.  For example, K.M. was eight to ten years old, had failing grades before she entered special education and was in special education classes for three years, while the child in Harris aged from ten to more than twelve years old, changed age categories from a child to an adolescent, attended regular education classes, had passing grades and had a physical illness that required medical treatment.  The many factual differences between the two cases outweigh the similarities, such as that both children were suspended from school for bad behavior.  In addition, as was discussed more fully above, substantial evidence supports the ALJ's findings that K.M. had less than marked limitations in the three domains at issue between May 27, 2010 and September 8, 2011.

The ALJ's decision is consistent with the relevant Social Security Rulings and other legal requirements and with the evidence as a whole.  The ALJ "has not failed to consider [the evidence cited by plaintiff]; rather, he failed only to give it the weight plaintiff desired.  In attempting to resolve the various conflicts and inconsistencies in the record in accordance with the applicable standards, the ALJ did 'precisely what an ALJ is instructed to do.'"  N.R.R. ex rel. Davenport v. Astrue, No. 4:12CV54, 2013 WL 1090397, at *9 (E.D. Mo. Mar. 15, 2013) (quoting Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666-67 (8th Cir. 2003)); accord Chambliss v. Massanari, 269 F.3d 520, 523 (5th Cir. 2001); Newton, 209 F.3d at 452; McLaughlin v. Astrue, No. 1:11-CV-176-BL, 2013 WL 171902, at *4 (N.D. Tex. Jan. 15, 2013).

As a judge in the Western District of Louisiana recently noted in similar circumstances,

> there will almost always be a degree of subjectivity and judgment inherent in determining whether someone's limitation is marked or less than marked. The ALJ looked to evidence from medical professionals, a teacher, and the parent. He discussed all of that evidence in significant detail . . . and afforded the opinions' weight based on how consistent he found them to be with the overall record.
>
> Plaintiff complains that a proper weighing of the opinions of the professionals should have resulted in findings of greater degree of limitation. None of the various reports or opinions may be perfect, but together they provide more than enough to meet the substantial evidence standard, which requires that this court affirm the Commissioner's decision. To warrant judicial relief, the court would have to find that the evidence was so compelling in favor of the claimant that the ALJ was required to find marked limitations in two domains, when he found [only one] in his actual opinion. The evidence is not so compelling. <u>One may make reasonable arguments that the evidence should have been assessed differently in the first instance, but those arguments are beyond the limited role of the court in the review process.</u>

<u>Lee o/b/o R.L. v. Comm'r, Soc. Sec. Admin.</u>, No. 11-cv-0910, 2013 WL 639060, at *4 (W.D. La. Jan. 29, 2013) (Hornsby, M.J.), <u>report & recommendation adopted</u>, 2013 WL 639058 (W.D. La. Feb. 21, 2013) (Hicks, J.) (emphasis added).

Accordingly, plaintiff's assignment of error lacks merit.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and her complaint be **DISMISSED WITH PREJUDICE**.

27

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this ____22nd____ day of November, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.